UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
2019 FEB 15 P 12:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

LYNDON TCHERNESHOFF,

    PLAINTIFF

VS.                            CIVIL ACTION NO.: 5:19CV284 TMJ

NORTHROP GRUMMAN
CORPORATION, NORTHROP
GRUMMAN BENEFITS PLAN
ADMINISTRATIVE COMMITTEE,
and the NORTHROP GRUMMAN
ELECTRONIC SYSTEMS
EXECUTIVE PENSION PLAN,

    DEFENDANT.

## COMPLAINT

**COMES NOW, Lyndon Tcherneshoff**, by and through counsel, brings this action against Defendant Northrop Grumman Corporation, the Northrop Grumman Benefits Plan Administrative Committee, and the Northrop Grumman Electronic Systems Executive Pension Plan, concerning the failure to pay the benefits available under its defined benefit as required under ERISA and the terms of the Plan itself.

## INTRODUCTION

1. Lyndon Tcherneshoff is a resident of the State of Alabama, and was employed by Northrop Grumman Corporation ("NGC") from April 30, 1993, through October 2, 2009.

2. At the time of his separation from NGC in 2009, Tcherneshoff was working for NGC in Madison County, Alabama.

3. During his employment, Tcherneshoff became vested in both the Northrop Grumman Electronic Systems Pension Plan ("ESPP") and the Northrop Grumman Electronic Systems Executive Pension Plan ("ESEPP").

1

4. Tcherneshoff participated in the ESEPP and was listed on the ESEPP website as vested following his separation in 2009.

5. Tcherneshoff has been receiving his vested pension benefit pursuant to the ESPP in accordance with the terms of that plan.

6. On April 26, 2018, Tcherneshoff presented his claim for benefits to the ESEPP pursuant to the terms of that plan.

7. On July 26, 2018, the ESEPP denied Tcherneshoff's claim for ESEPP benefits.

8. On August 24, 2018, the ESEPP, for the first time, attempted to present a refund of Tcherneshoff's contributions in the amount of $4,381.36, which instrument Tcherneshoff has not negotiated.

9. Tcherneshoff timely made his administrative appeal of the ESEPP decision on September 17, 2018.

10. On November 19, 2018, the Northrop Grumman Benefits Plan Administrative Committee denied Tcherneshoff's administrative appeal, and advised him of his right to file suit within ninety days of that final administrative decision.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

12. This Court has personal jurisdiction over the Defendants because it has a physical location and transacts business in, and resides in, and has significant contacts

with, this District, and because ERISA provides for nationwide service of process.

13. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in this District.

## PARTIES

14. Plaintiff Lyndon Tcherneshoff is a resident of Valley Head, Alabama, and a beneficiary in the ESEPP. Tcherneshoff was employed by Northrop Grumman Corporation ("NGC") from April 30, 1993, through October 2, 2009.

15. Defendant Northrop Grumman Benefits Plan Administrative Committee (the "Committee") is the committee that has fiduciary responsibility for the administration and operation of the Defendant ESEPP as set forth in the ESEPP plan document. The Committee is a named fiduciary in the ESEPP, and is a fiduciary for the ESEPP within the meaning of ERISA § 3(21(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or control respecting the management of the Plan and authority or control respecting the management or disposition of Plan assets.

16. Defendant Northrop Grumman Electronic Systems Executive Pension Plan ("ESEPP") is the plan that is the subject of this complaint.

17. Defendant Northrop Grumman Corporation ("NGC") is the employer through whom Tcherneshoff became vested in the ESEPP.

## EXHUASTION OF REMEDIES

18. Tcherneshoff has exhausted his administrative remedies concerning his claim for benefits from the ESEPP, and received his final denial and notice of his right to file suit on November 19, 2018, and this suit is timely filed within the ninety days provided.

**SUBSTANTIVE ALLEGATIONS**

19. Tcherneshoff was enrolled into the ESEPP on January 1, 2003, with a five-year vesting period, which service he completed on January 1, 2008.

20. Tcherneshoff also was performing Executive Service when he became eligible under the Special Retirement Benefit provisions of the ESPP, thus meeting the requirements for Retirement Eligibility under the ESEPP.

21. Having obtained vested status with the ESEPP, Mr. Tcherneshoff is currently retirement eligible under alternative provisions of the ESEPP.

22. The Northrop Grumman Executive Pension Plan Section 2.24 provides the following guidance:

Retirement Eligible. An Executive is Retirement Eligible if he or she is accruing Vesting Service and: . . .

    (b) has attained age 60 and completed 10 or more years of Vesting Service;
    . . .; or,
    (d) has satisfied the requirements for an immediate pension under the Special Retirement Benefit provisions of the ES Pension Plan.

23. Under both subsection (b) and (d) of the explicit language of Section 2.24 of the NGESEPP, Mr. Tcherneshoff is "Retirement Eligible."

24. Mr. Tcherneshoff was, in fact, pension eligible from October 2, 1994, through June 27, 1997, as he exercised his option to buy back his pension. For over a decade, NGC made no attempt to refund plaintiff for his payment to buy back years of vesting service for time employed at a subsidiary of NGC. The plaintiff does not desire a refund of this buy back provision because that would limit his benefits under the ESEPP. NGC actions were a breach of fiduciary responsibility, violating Plaintiffs ERISA rights and generally accepted accounting principles.

4

25. The Plan Administrator has a fiduciary duty to plan participants and beneficiaries to see that they receive the benefits that they are entitled to. The decision to deny Mr. Tcherneshoff his vested benefits under the ESEPP is a breach of that fiduciary duty.

26. On July 2009, NGC completed an alignment of all Pension Plans across the corporation and issued a Summary of Material Modifications (SMM) for NGC Pension Plans. During that harmonization of pension benefits, NGC added a Special Layoff Provision to NGC Pension Plans. While the plaintiff was employed by NGC, he contacted the fiduciary in charge of the ESEPP to obtain clarification that the ESEPP was aligned with all other plans and Electronic Services Pension Plan (ESPP). The fiduciary at the time, Bruce Weinell, expressed unawareness of any lack of alignment between the plans with respect to the Special Layoff Provision. To the extent that the pension harmonization process was not complete and comprehensive, the Defendants failed to execute their fiduciary responsibility to those vested in the ESEPP.

27. During the Claims and Appeal Process, the plaintiff requested all versions of the ESEPP Summary Plan Descriptions (SPD) and SMM. NGC submitted portions of this data, but omitted to send the 2012 update to the ESEPP that added the Special Layoff Provision to the ESEPP. The 2012 version of the SPD states that it supersedes all prior versions of the NGESEPP SPD and has caveats that do not preclude the plaintiff from ESEPP benefits. The Defendants corrected the ESEPP harmonization errors made in 2009, identified by the plaintiff, but are refusing to allow the plaintiff to receive the benefits from a "now current" retirement plan. The plaintiff seeks to retire and is requesting the benefits he is entitled to under the current ESEPP. All prior versions of ESEPP SPD are obsolete and, in fact, included oversights pointed out by the Plaintiff and corrected by the Defendants.

28. During the administrative appeal process, NGC acknowledged that a prior letter submitted by the plaintiff in 2009 was not a Claim for Benefits in accordance with NGC procedures. NGC then rejected the Appeal stating the employee had not met the criteria for pension benefits

based on an obsolete ESEPP SPD. NGC neglected to use the "now current" guideline for benefits. The 2012 version of the SPD outlines that this plan supersedes all prior version of the guidelines and has caveats that do not preclude the plaintiff from ESEPP benefits.

29. The plaintiff ran a very profitable site in Huntsville for the defendants, generating profits that far exceeded the average across the corporation.

30. Upon execution of the Severance Agreement with NGC, the Plaintiff deposited the severance check from NGC into his Redstone Federal Credit Union (RFCU) account. The RFCU subsequently contacted the Plaintiff to inform him the deposit was rejected because the Defendant NGC cancelled the check. The check was, in fact, cancelled without any coordination with the plaintiff. NGC did subsequently re-issue a check.

31. Additionally, the layoff occurred a couple of months before a large incentive compensation check was due to be paid to the Plaintiff.

32. The ESEPP guidelines for future employment after separation from NGC provided specific requirements for the plaintiff to obtain approval from NGC prior to future employment. In order to protect his ESEPP Pension Rights, the plaintiff requested guidance from the defendant NGC and none was provided.

33. Mr. Tcherneshoff was fully vested at the time of his layoff in October of 2009. When Tcherneshoff negotiated the terms of his lay-off with NGC, he was promised and guaranteed that he would receive the benefit of all pensions in which he was vested, which included the ESEPP.

34. Under the ESEPP in effect at the time of Mr. Tcherneshoff's claim, Article 3, Section 3.01, of the 2012 Plan document, he is eligible for benefits, as a vested executive, 53 years old, with ten years of service.

6

35. Article 3.01 does not bar his claim based on his layoff date, because he meets all four elements of Article 3.01.

36. The savings clause in the 2012 version of Article 3.01 would also prescribe eligibility for Mr. Tcherneshoff. The 2012 version of Article 3.01 provides for Mr. Tcherneshoff's eligibility as having accrued five years of executive service and actively accruing benefits at the time of his involuntary separation.

37. Mr. Tcherneshoff is also eligible for benefits pursuant to the 2009 version of the Plan and the exhibits attached to the decision letter. Mr. Tcherneshoff is asserting a claim for benefits pursuant to Article 2, Section 2.24 (b) (60 years of age with ten years of vesting service), and Section 2.24 (d) (eligible for ES Pension Plan).

38. Mr. Tcherneshoff was, and is, retirement eligible for the ESPP, and has in fact been receiving this benefit. Mr. Tcherneshoff is also vested and eligible under the terms of subsequently modified versions of the Plan. The language set forth in Exhibit C of the decision letter provides Mr. Tcherneshoff's eligibility for early retirement benefits due to his lay off in Section C4.03(b).

39. In the severance plan presented to Tcherneshoff by Northrop Grumman in 2009, and executed by Northrop Grumman, it was explicitly represented to Mr. Tcherneshoff that the early retirement provision would apply to "all parts of your pension benefit." (Tcherneshoff Claim Documentation Page 56).

40. Tcherneshoff was listed as vested in the ESEPP by Northrop Grumman records following his separation because he was, in fact, vested. Any discrepancies between Plan documents must be resolved in the claimant's favor in order to discharge the Plan's fiduciary obligation to the Participant. Tcherneshoff was listed as vested on the ESEPP benefits website following his separation and for a decade thereafter.

## FIRST CLAIM FOR RELIEF
### Declaratory and Equitable Relief
**(ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

41. Plaintiff realleges and incorporates herein by reference all prior allegations in this Complaint.

42. The ESEPP improperly denied benefits for Tcherneshoff as required by ERISA and the ESEPP.

43. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

44. Pursuant to this provision, Plaintiff seeks orders from the Court providing a full range of equitable relief, including but not limited to: (a) calculation, correction and payment of benefits; (b) an "accounting" of all prior benefits due; (c) a surcharge; (d) disgorgement of amounts wrongfully withheld; (e) disgorgement of profits earned on amounts wrongfully withheld; (f) a constructive trust; (g) an equitable lien; (h) an injunction against further violations; and (i) other relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### For Recovery of Benefits Under the Plan
**(ERISA § 502(a)(1) and (3), 29 U.S.C. § 1132(a)(1) and (3))**

45. Plaintiff realleges and incorporates herein by reference all prior allegations in this Complaint.

46. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

8

47. The ESEPP improperly refused to pay benefits for Tcherneshoff in accordance with ERISA and the terms of the ESEPP.

48. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

49. Plaintiff is entitled to recover actuarially equivalent benefits, to enforce their right to the payment of past and future actuarially equivalent benefits, and to clarify their rights to future actuarially equivalent benefits, under the Plan.

### THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (ERISA §§ 1104 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3))

50. Plaintiff realleges and incorporates herein by reference all prior allegations in this Complaint.

51. NGC acts as a fiduciary of the ESEPP.

52. The Committee is a named fiduciary of the ESEPP.

53. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional

9

test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

54. The Committee and its members are fiduciaries for the Plan because they exercised discretionary authority or discretionary control respecting management of such plan or exercised any authority or control respecting management or disposition of Plan assets. In particular, they had authority or control over the amount and payment of benefits to Tcherneshoff in accordance with the ESEPP.

55. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan in accordance with the documents and instruments governing the plan insofar as the Plan is consistent with ERISA.

56. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

57. Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief, determining that the Plan's established methodologies for calculating actuarial equivalence of Alternate Annuity Benefits violate ERISA because they do not provide an actuarially equivalent benefit.

58. Plaintiff further seeks orders from the Court providing a full range of equitable relief, including but not limited to: (a) calculation, correction and payments of benefits; (b) an "accounting" of all prior benefits due; (c) a surcharge; (d) disgorgement of amounts wrongfully withheld; (e) disgorgement of profits earned on amounts wrongfully withheld; (f) a constructive trust; (g) an equitable lien; (h) an injunction against further

violations; and (i) other relief the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### Equitable Reformation
### (29 U.S.C. § 1132(A)(3))

59. Plaintiff realleges and incorporates herein by reference all prior allegations in this Complaint.

60. Northrop Grumman made changes to the administration, interpretation, or terms of the ESEPP it did not properly or clearly disclose to the participants.

61. On July 2009, NGC completed an alignment of all Pension Plans across the corporation and issued a Summary of Material Modifications (SMM) for NGC Pension Plans. During that harmonization of pension benefits, NGC added a Special Layoff Provision to NGC Pension Plans. While the plaintiff was employed by NGC, he contacted the fiduciary in charge of the ESEPP to obtain clarification that the ESEPP was aligned with all other plans and Electronic Services Pension Plan (ESPP). The fiduciary at the time, Bruce Weinell, expressed unawareness of any lack of alignment between the plans with respect to the Special Layoff Provision. To the extent that the pension harmonization process was not complete and comprehensive, the Defendants failed to execute their fiduciary responsibility to those vested in the ESEPP.

62. Even after the Defendants decided to change how they administered the ESEPP and applied the language regarding eligibility following lay-off, it continued to tell Tcherneshoff in severance documentation and on the ESEPP benefit website that he was still vested in accordance with the buy-back that he had previously made.

63. The Defendants did not disclose to Tcherneshoff that he was not vested, or attempt to return the funds that he had used to buy back his pension, until he applied for ESEPP benefits for his retirement.

64. The Defendants breached their fiduciary duties to Tcherneshoff by continuing to inform Tcherneshoff that he

was vested, and by retaining his buy-back contribution, by failing to properly implement harmonization among plans, and by promising him the receipt of his vested pension benefits in his lay-off documentation.

65. As a result of this breach of fiduciary duty, the Court is empowered to equitably reform the ESEPP to reflect the material terms as disclosed to the participant and as participant reasonably understood those terms based on the Defendants' disclosures.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A. Declaring that the ESEPP failed to properly pay benefits due to the Plaintiff, in violation of ERISA;

B. Ordering that the Plan be equitably reformed to reflect those terms of the Plan and application thereof as Defendants disclosed to the Plaintiff, including the records of the Defendants indicating the vested status for the Plaintiff in the ESEPP and the severance documentation indicating that the Plaintiff would receive the benefit of all vested pensions;

C. Ordering Defendants to pay benefits in compliance with ERISA

D. Ordering Defendants to correct and recalculate benefits that have been paid;

E. Ordering Defendants to provide an "accounting" of all prior payments of benefits due under the Plan to determine the proper amounts that should have been paid;

F. Ordering Defendants to pay all benefits improperly withheld, including under the theories of surcharge and disgorgement;

G. Ordering Defendants to disgorge any profits earned on amounts improperly withheld;

H. Imposition of a constructive trust;

I. Imposition of an equitable lien;

J. Ordering Defendants to pay future benefits in accordance with ERISA's actuarial equivalence requirements;

K. Ordering Defendants to pay future benefits in accordance with the terms of the Plan;.

L. Awarding, declaring, or otherwise providing Plaintiff all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper;

M. Awarding attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

N. Any other relief the Court determines is just and proper.

Respectfully submitted this 15th day of February, 2019.

/s/ John R. Campbell

**JOHN R. CAMPBELL**
**ASB-8555-C64J**
Attorney for the Plaintiff
229 East Side Square
Huntsville, Alabama 35801
Tel: (256) 534-0407
Facsimile: (256) 715-7669
Email: jrc@jrc-law.net